ARIZONA SHELTON *v.* IRA MINNIS *et al.*

[65 South. 114.]

1. INSURANCE. *Mutual benefit insurance. Children. Code* 1906, *section* 1655.

Under the Constitution and by-laws of a mutual benefit association, providing that benefits should be payable only to certain relatives including "children," an illegitimate child of a female member is not excluded from sharing the benefits, in view of section 1655, Code 1906, which provides that illegitimate children shall inherit from their mother.

2. SAME.

Where, in such case, the member surrendered a policy naming her husband as beneficiary, and procured a new policy to be issued naming her illegitimate child as the beneficiary, it was entitled to the benefit.

3. MUTUAL BENEFIT INSURANCE. *Beneficiaries. By-laws.*

In determining who is entitled to receive the benefits of mutual benefit associations wherein the money contributed by its members provides the funds from which the benefits are paid, a liberal construction to the by-law of the association so as to effect the purpose of the parties to the contract should be given.

APPEAL from the circuit court of Leflore county.

HON. MONROE MCCLURE, Judge.

Suit by Arizona Shelton against the Grand United Order of Odd Fellows, which interpleaded Ira Minnis, from a judgment for Minnis, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Lomax & Tyson,* for appellant.

On the proposition of Arizona Shelton, although an illegitimate child, being embraced within the meaning of the word "children," as used in the by-laws of the defendant order, we are inclined to believe that both opposing counsel and ourselves have been far estray from the

proper point of view in the discussion of this feature, in the briefs already filed in this case. The holding of the Massachusetts court in *Ligue des Patriots,* 54 L. R. A. 814, cited by opposing counsel, to the effect that the word, "children" did not embrace, within its meaning, an illegitimate child, was an interpretation of the meaning of the word as used in a statute and not as used in the constitution and by-laws of the association as stated by counsel. In all cases where the use of a word in a statute, is under consideration, such a construction is proper. But the word, as used in the by-laws of the Odd Fellows Benefit Association, should be construed to mean what the parties to the contract intended it to mean. And in seeking to ascertain whether or not the parties to this insurance contract intended to exclude illegitimate children, the use of the word "children" in the by-laws of defendant order should be given its common, ordinary and popular meaning, and not such legal technical meaning, as is given it, by the court in interpreting its meaning as used in a statute. The law can determine the meaning of the word "children" as used in the statute, but not as used in a contract, where the intention of the parties alone governs the interpretation; and it must be taken that the word "children," as used in the case at bar, was intended to be used in its commonly accepted, ordinary and popular sense. Webster's International Dictionary, 1911 Edition, defines the word "child" to mean "a son or daughter; a male or female descendant in the first degree; the immediate progeny of human parents; in law legitimate offspring." This definition is, in substance, as given in other standard dictionaries. The meaning of the word "children," as commonly and ordinarily understood and used, by people generally, does not exclude illegitimates. Bacon on Benefit Societies, sec. 257; 37 L. Ed., U. S. Rep. 745; 39 L. Ed., U. S. Rep. 549; 40 L. Ed., U. S. Rep. 203; 1913 Ann. Cases, 1243.

If there is any doubt of the ordinary meaning of this word, when used by people generally, there can certainly

be none when used by members of the negro race in dealings and contracts among themselves. It is a matter of such common knowledge, as the court can take judicial notice of, that the custom prevails, not only in this state, but through the entire south, of there being no distinction recognized by negroes, between legitimate and illegitimates, when they used the word "children," in dealings between themselves. 1 Elliott on Evidence, sec. 64; 2 Elliott on Contracts, secs. 1513, 1517, 1705, 1713, 1720, 1721, 1790. *Spegler* v. *Williams,* 67 Miss. 1; *Hancock* v. *Naval Stores,* 93 Miss. 822.

We submit, that if there should be any doubt, in the mind of the court as to whether or not the use of the word "children," in the by-laws of the defendant order, included illegitimates, such doubt will be resolved in favor of appellant, Arizona Shelton.

*C. C. Moody,* for appellee.

It is asserted that Arizona Shelton was eligible to be named as a beneficiary, notwithstanding her illegitimacy.

The purpose for which the association was created was to provide an endowment fund to be paid only to certain designated relatives of deceased members, to wit: Husband, wife, mother, father, children, sister, brother, uncle, aunt, nephew, niece or dependent relatives.

It is claimed that Arizona Shelton, an illegitimate child, is a child of the assured within the meaning of the word "children" as used in section 4 of the Constitution and by-laws. It is said that the popular meaning of the word "children" includes illegitimate as well as legitimate children. This, I expressly deny. Webster's International Dictionary, 1911 Edition, referred to by the attorneys for the appellant, defines the word "child" to mean, "A son or daughter; a male or a female descendant in the first degree; the immediate progeny of human parents; in law legitimate offspring." This very authority cited by counsel itself defines the word "child" to mean legitimate offspring.

In the Black's Law Dictionary, the word "children" is defined as follows: "Offspring; progeny; legitimate offspring; children born in wedlock."

In no dictionary that I have been able to find does the word "children" appear to be defined as including illegitimate offspring. On the contrary it is defined as including legitimate offspring. Therefore, I contend that the popular meaning of the word "children" includes, and only includes, legitimate offspring of their parents and never illegitimate offspring. .

The word "children," when used in the statutes of any state, the constitution or by-laws of any corporation, or when used in any contract whatever, has always been constructed to mean legitimate children unless a contrary intention is clearly expressed. This is the universal rule of construction and in the absence of anything clearly indicating an intention to include illegitimate, the word "children" has never been construed to mean any but legitimate offspring.

But I take it that I am unnecessarily taking up the time of this court on this question. This court, I take it, is not going to construe the word "children" as used in section 4 of the constitution and by-laws of the Odd Fellows Benefit Association to include illegitimate children. The purpose for which this order was created was to create an endowment fund to be paid, among others, to the legitimate children of the member of the order and this court will not hold that the purpose for which that order was created was to create a fund to be paid to the illegitimate children of its members. Therefore, I contend that Arizona Shelton, as an illegitimate child, was not of the class for whose benefit the order was created and to whom the fund created should be paid, and not being of that class, a certificate in which she is named as beneficiary, is, by virtue of section 16, a nullity. This section not only provides that no payment shall be paid on such a certificate, but it, in effect as well, provides that the certificate itself shall be void.

The laws of the association not only prescribe those to whom the fund shall be paid, but as well prescribes, that no benefit shall be paid to any one not of that class and in addition, that if a certificate to that effect is issued, it shall be void. Even if section 16 was not incorporated in the constitution and by-laws of the order, I would still contend that a certificate in which one not of the class prescribed by section 4 is named as beneficiary, would be a nullity.

COOK, J., delivered the opinion of the court.

Appellant sued the Grand United Order of Odd Fellows upon a certificate, or policy, of insurance written by it upon the life of her deceased mother, and made payable to appellant. The defendant filed its plea, or interpleader, and paid into court the amount covered by its policy of insurance, admitting its liability, but averring that Ira Minnis, appellee, and husband of the deceased, had propounded his claim to the money due on said policy, and asked that he be summoned to appear and contest with appellant his right to the money. Ira Minnis did enter his appearance and propound his claim, and after hearing the evidence the court awarded the money to the husband, and from this judgment this appeal is prosecuted.

It appears that Sarah Minnis, the mother of appellant, and the wife of appellee, being a member of the order of Odd Fellows, on the 10th day of August, 1906, applied to the Odd Fellows Benefit Association for a policy of insurance on her life, payable in the event of her death to Ira Minnis, her husband. This policy was issued as applied for. On the 24th day of April, 1911, Sarah Minnis, desiring to change the beneficiary named in the policy, applied to the association and surrendered the policy, signing the following indorsement written on the back of same, to wit: "I hereby surrender to the Odd Fellows Benefit Association of the G .U. O. of O. F. of the district of Mississippi the within policy, and direct that a new

one be issued to me, payable to Arizona Shelton, child.''
In accordance with her direction, the officers of the as-
sociation issued and delivered to her the policy upon
which this suit was instituted, making the same payable
to appellant, Arizona Shelton. The record shows that
Arizona Shelton is the illegitimate daughter of the de-
ceased, Sarah Minnis.

The constitution and by-laws of the benefit association
state the objects and purposes of its organization as fol-
lows: ''The purpose for which the Odd Fellows benefit
is created, is to insure the lives of the members of the
Grand Order of Odd Fellows and Household of Ruth, and
provide an endowment fund to be paid only to the fol-
lowing relatives of deceased members of the association
who were financially, at the time of their death, in the
Odd Fellows Benefit Association, the Grand Lodge, and
their subordinate lodge, viz.: Husband, wife, children,
mother, father, sister, brother, uncle, aunt, nephew, niece,
or dependent relatives.''

It is contended by appellee that the issuance of the
policy payable to Arizona Shelton, the illegitimate daugh-
ter of the deceased mother, was *ultra vires*. It is also
contended that Sarah Minnis only intended to change the
beneficiary in the original policy, and that this was also
the purpose of the association's officers, but this intention
of the contracting parties was defeated by their misin-
terpretation of the by-laws and constitution of the order.
It is said that the laws of the association did not author-
ize it to issue a policy payable to the illegitimate child
of the insured; the word ''children'' in the by-laws re-
ferring to legitimate children alone. Upon this assumed
lack of power in the association to make a policy issued
upon the life of a mother payable to an illegitimate child
is based the theory that the original policy payable to
the husband remained in force, the policy payable to the
illegitimate being void. This view seems to have been
adopted by the trial court.

It seems to us that in determining who is entitled to receive the benefits of mutual benefit associations, wherein the money contributed by its members provides the fund from which the benefits are paid, we should give a liberal construction to the by-laws of the association so as to effect the purposes of the parties to the contract. However the common law may have limited the civil rights of bastards, it seems clear that the public policy of this state expressed in its inheritance laws carries us far away from the harsh rules of the common law. Section 1655, Code of 1906, recognizes fully and unreservedly the more humane rule that all illegitimates shall inherit from their mother. This statute seems to imply that the mother and not the innocent child shall be held responsible for her sins, and, further, that the illegitimate child shall receive from its dead mother the fruits of her labor or fortune. Is it not fair to assume that it was the purpose of this benefit association to accord to all children of a mother member the same rights and privileges the statute laws of the state have, in principle, given them —whether the children be legitimate, or illegitimate? A child capable of inheriting would seem to come within the class designated by the by-laws. Certainly the child has an insurable interest in the life of its mother, and it seems equally certain that the by-laws were not designed to discriminate between legitimate and illegitimate children possessing equal rights to inherit from their mother. The mother in this case believed that her illegitimate daughter was one of her children, and so did the officers of the association.

We believe they correctly interpreted the meaning of the by-laws, and the judgment of the lower court is reversed, and judgment will be entered here for appellant.

<em>Reversed.</em>