Josephine BANKS

v.

UNITED STATES of America.

Civ. No. 3561.

United States District Court
D. Connecticut.
March 12, 1958.

Ufa E. Guthrie, Hartford, Conn., for plaintiff.

Henry C. Stone, Asst. U. S. Atty., Hartford, Conn., for defendant.

J. JOSEPH SMITH, Chief Judge.

Plaintiff is a resident of Hartford, Connecticut. She was born August 14, 1885. While living on Main Street in Hartford in 1937 she became acquainted with Edward J. Alexander, born June 30, 1909, a musician who was estranged from his wife and was rooming alone at 12 Canton Street in a house whose backyard adjoined that of plaintiff. He was accustomed to drop in on plaintiff for coffee and sometimes for meals and recipro-

cated by mopping and sweeping stairways and running errands for plaintiff, who supported herself by minding preschool children for working parents. Plaintiff occasionally did washing for Alexander and loaned or gave him shirts which had belonged to a son of plaintiff's who had died. She admonished Alexander about excessive drinking, and at times had him sleep off in her apartment the effects of drinking so that he would be fit for his night's work with a band in a restaurant. In mid or late 1942 Alexander left Hartford with a circus band. He was inducted into military service March 24, 1943 at Richmond, Virginia. He intended to return to Hartford after the war and to live in plaintiff's house. He carried on a correspondence with plaintiff during his service, asking for and receiving her picture, for which he made a frame of native wood, and sending his picture to plaintiff. A large part of the correspondence was lost by plaintiff when she turned it over to a man she believed to be a lawyer to submit to the Veterans Administration, which the man failed to do. Alexander sent plaintiff on one occasion a war bond as a gift. He took out a $10,000 National Service Life Insurance Policy, No. N 10 094 071, effective April 1, 1943, designating a sister Lillian Alexander, a beneficiary. On his application for the insurance Mrs. Banks' name was typed in as beneficiary, X'ed out and his sister's name inserted. He designated Eleanor Alexander, wife, as sole beneficiary to receive the six months' death gratuity pay. He designated Mrs. Banks, the plaintiff, as emergency addressee. He paid premiums on his insurance policy for the period from April 2, 1943 to November 1, 1945. In March 1945 he wrote the Veterans Administration stating that Mrs. Banks was the beneficiary. The Director of Insurance notified him that his sister had been the original beneficiary but that the certificate sent her at the address given by him had been returned unclaimed. Alexander thereupon made out and signed a change of beneficiary form designating Mrs. Banks as sole beneficiary under the

policy, giving the relationship as "Parent (Loco-Parentis)". Alexander was injured by a falling tree and died October 18, 1945 on Saipan. This action was timely brought by plaintiff to recover on the policy. Efforts by government agencies, including the F.B.I., to locate the soldier's estranged wife, sister or other relatives have been unsuccessful. Advertising for them during the pendency of this action in the cities where they were last reported to live brought no response.

The soldier looked on the plaintiff as a parent, as his closest remaining connection, the one to be notified if anything happened to him, the one he wished to benefit by his insurance in case of his death and to whom his effects should be sent, and her house the nearest thing to a home he could go to on release from the service, even though he never had lived in her home, was not related to her by blood or marriage, and had not supported her when working. Plaintiff was at the time of the soldier's death his parent within the meaning of the National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq. A reasonable attorney's fee is 10% of accrued benefits and of each payment received thereafter by plaintiff under the Act.

### Discussion

■ There is here no ground to hold the government estopped to assert its defenses, for although the soldier paid premiums in reliance on the acceptance by the government of the designation of plaintiff as beneficiary, there was no way the government could have known of the details of the relationship until the papers supporting the claim were filed after the soldier's death. The question is therefore whether on the evidence the plaintiff is a person qualifying as a parent because in loco parentis to the soldier within the meaning of the Act.

■ Clearly the relationship, particularly in view of the soldier's age, would not qualify the plaintiff as a parent under what has been called the strict common law definition. It may not be sufficient

under even a liberal definition, if something broader than the so-called strict common law definition was intended by the Congress, unless we hold that Congress intended to give very nearly decisive weight to the soldier's own definition of the relationship as parent and son. The cases have not been in accord, some requiring creation of the relationship during the soldier's minority, recognition of an obligation to support, and other strict elements of a natural parent-child blood relationship. United States v. McMaster, 5 Cir., 174 F.2d 257; Bland v. United States, 5 Cir., 185 F.2d 395; Leyerly v. United States, 10 Cir., 162 F. 2d 79; Powledge v. United States, D.C. N.D.Ga., 88 F.Supp. 561, affirmed 5 Cir., 193 F.2d 438; Richards v. United States, D.C.N.D.W.Va., 93 F.Supp. 208; Neuhard v. United States, D.C.M.D.Pa., 83 F. Supp. 911; Howard v. United States, D.C.E.D.Ky., 2 F.2d 170 (War Risk Insurance Act); Niewiadomski v. United States, 6 Cir., 159 F.2d 683. The tendency appears to have been, however, to broaden the definition in order if at all possible to carry out the soldier's wishes, particularly in view of his payment of the premiums. Zazove v. United States, 7 Cir., 156 F.2d 24; Thomas v. United States, 6 Cir., 189 F.2d 494, certiorari denied 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641; Baldwin v. United States, D.C.W. D.Mo., 68 F.Supp. 657; Reynolds v. United States, D.C.Kan., 96 F.Supp. 257; United States v. Rock, 92 U.S.App. D.C. 1, 200 F.2d 357; Jadin v. United States, D.C.E.D.Wis., 74 F.Supp. 589; Smith v. United States, D.C.R.I., 69 F. Supp. 387; Burke v. United States, D.C. E.D.Pa., 85 F.Supp. 93, affirmed Per Curiam, 3 Cir., 176 F.2d 438; Wood v. United States, D.C.W.D.S.C., 74 F.Supp. 732. Congress has followed a similar course, to the extent of removing the restriction as to classes of beneficiary in the 1946 Amendments to the Act.

Plaintiff had formed an attachment for the soldier as an older adviser and friend, making him welcome in her home prior to his service for a period longer than the one year minimum of the statute. He looked on her in the light of a parent, as demonstrated by his so naming her in the beneficiary description and by his desire to return and live in her home after finishing his army service. His formality in address in the correspondence may be outweighed by his desire to exchange pictures and his care for hers. The relationship was to a large extent like that of a mother and an emancipated adult son. She did in a broad sense stand in the place of a parent to him and we should so hold in accordance with his expressed desires.

## Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Plaintiff is entitled to receive from the defendant payments as parent, sole beneficiary on the policy of Edward J. Alexander.

3. Ufa E. Guthrie, Esq., is entitled to be paid from the proceeds of the policy 10% of each payment made to plaintiff as such sole beneficiary.

Form of judgment for the plaintiff in accordance herewith may be submitted on notice.